CLAYTON A. WELCH et al., Doing Business under the Name of I. T. & C. A. WELCH & SONS, Appellants, v. PAUL TALBOT, Respondent.

Third Department, November 15, 1944.

*Joe Schapiro,* attorney for appellants.

*O. L. Van Horne,* attorney for respondent.

*Per Curiam.* The judgment should be reversed on the law. There is a slight variance in the evidence, but the court stated in the charge, without objection: " It appears without dispute that a horse was sold to the defendant by the plaintiffs on November 4, 1940; that at that time Mr. Talbot [defendant] went to the stables of plaintiff and informed the man in charge there that he wanted a horse to work on his farm. He didn't want a high-priced horse. And he was shown this horse by either the hired man there or by Mr. Welch [one of the plaintiffs], it doesn't make very much difference which. He was told he could take the horse and try it out; if he wanted to accept it, the price would be seventy-five dollars, and if there was an exchange of the other horse, if they wanted to take fifteen dollars for it, it would be applied on the purchase price. He took the horse, or had it taken, to his farm."

The charge further states, without exception: " The horse was taken to defendant's premises, and next day plaintiff's attention was called to the fact that the horse had a cough. Plaintiff went there and gave the horse some medicine. Defendant continued to keep the horse until it died some time in February, 1941, a period of four months, about."

The only warranty asserted was that defendant said " he wanted a horse to work on his farm." He says that the plaintiff told him the horse would work on the farm. A veterinarian was sworn. He says that the horse died from a bilateral

hemorrhage of the nose and head which he says " was caused by a ruptured blood vessel. And what caused this could be only two or three things: passage of the stomach tube, or infection or abscess, or a necrotic blood vessel of some kind."

The cause of death was in no. way connected with the slight cough which was observed earlier in the previous November. Plaintiffs did not give an insurance policy against death when they sold the horse, and as matter of law (Personal Property Law, §§ 130, 150, subd. 3) under the facts proven four months was an unreasonable time to keep the horse. When the horse died defendant did not communicate with plaintiffs except, if at all, through asking a neighbor to tell plaintiffs in the event he happened to see them, that the horse was dead.

The motion for a directed verdict made by plaintiffs' attorney at the close of the evidence should have been granted.

The judgment should be reversed on the law, with costs.

HILL, P. J., BLISS, HEFFERNAN and FOSTER, JJ., concur; BREWSTER, J., dissents and votes to affirm.

Judgment reversed on the law, with costs, and plaintiffs' motion for a directed verdict granted, with costs.